IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| JAMES CROSS, *et al.*, | |
| | * |
| Plaintiffs, | |
| v. | *   CIVIL NO.: WDQ-05-0001 |
| | |
| FLEET RESERVE ASSOCIATION | * |
| PENSION PLAN, *et al.*, | |
| | * |
| Defendants. | |
| | * |

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Plaintiffs James Cross, Jerry Butler, Charles Calkins, Edward
Huylebruck, James Lee, Heidi Schuller, Pamela Wells, and
Patricia Williamson sued the Fleet Reserve Association Pension
Plan and Trust (the "Plan") and Noel Bragg under the Employment
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§
1001 *et seq.*[1] Pending are the Plaintiffs' motion for summary
judgment on Counts III and IV, and the Defendants' motion for
summary judgment on all counts. For the reasons discussed below,
the Plaintiffs' motion will be granted, and the Defendants'
motion will be granted in part and denied in part.

---

[1] The Plaintiffs voluntarily dismissed claims against
Russell Belt, Lawrence Boudreaux, Lindell Clymer, Forest Harell,
Robert King, Dean Miller, Victor Miranda, Ralph Schmidt, Eugene
Smith and Richard Smith.

1

I.   Background

The Plaintiffs, all former employees of the Fleet Reserve Association ("FRA") and vested participants of the Plan, allege that the Defendants: (1) violated ERISA's reporting and disclosure requirements (Count I); (2) breached fiduciary duties owed to the Plaintiffs (Count II); (3) violated ERISA's amendment and notification requirements (Count III); and (4) erroneously denied Plaintiffs' claims for additional benefits (Count IV). The Plaintiffs seek additional pension benefits, the production of withheld documents, and an injunction to amend the Plan and remove the Plan's administrator.

The FRA first adopted the Plan in 1972, and its terms were restated in a plan document adopted in 1985 (the "1985 Plan") Def's Mot. for Summ. J., Ex. 1.  The 1985 Plan states that accrued benefits shall be calculated using what the parties refer to as a "Step Formula."  *Id*. at 2, Ex. 1 ¶ 5.1.  The Step Formula provides for a lesser rate of benefit accrual for the portion of a participant's compensation that exceeds a stated amount (the "integration level") than for the portion of compensation up to the integration level.  *Id*.  In 1993, the FRA adopted an amendment that increased the integration level from $10,000 to $30,000.  *Id*. at 29.

In November 1996, the FRA board of directors (the "FRA Board"), in accordance with the 1985 Plan's amendment

requirements, adopted an amendment and restatement of the Plan (the "1996 Plan"). Def's Statement of Material Facts not in Dispute ("DSF"), ¶ 23. The 1996 Plan contains a different formula for calculating accrued benefits, known as the "Integrated Formula." Def's Mot. for Summ. J., 3. The Integrated Formula provides a *greater* rate of benefit accrual for compensation in excess of the integration level, and the rate up to the integration level remains unchanged from the 1985 Plan. *Id*. The 1996 Plan was effective July 1, 1989. *Id*., Ex. 3 at 1.

The Plaintiffs retired and received their accrued benefits from the Plan in lump sums between May 1996 and August 2002. *Id*. at 23. In March 2002, the FRA learned from the Plan's actuary that the accrued benefits that the Plan had paid up to that time had been calculated using the Step Formula, rather than the Integrated Formula stated in the 1996 Plan. *Id*. at 4. Defendant Bragg conducted an investigation for the FRA and concluded that the inclusion of the Integrated Formula in the 1996 Plan had been unintentional. *Id*. at 6. On the advice of FRA's counsel, Defendant Bragg requested permission from the Internal Revenue Service ("IRS") to "correct" the Plan for what he argued was a "scrivener's error," and to compute the accrual of benefits under the 1996 Plan using the Step Formula. *Id*. at 7-8. The IRS gave permission in October 2003. *Id*. at 9. In December 2003 the FRA adopted an amendment and restatement of the Plan (the "2003

Plan"), made effective on January 1, 2002, that replaced the Integrated Formula with the Step Formula. *Id*., Ex. 4, ¶ 5.1, DSF ¶ 30.

The discrepancy between the 1996 Plan and the way the Plaintiffs' benefits had been calculated was first reported to FRA members at a special meeting of the FRA Board in July 2002, and was discussed at the FRA's annual convention the following September. *Id*. at 10.  On April 24, 2004, the Plaintiffs applied to the Defendants for the additional benefits they believed they were owed under the Integrated Formula stated in the 1996 Plan. *Id*.  Defendant Bragg denied the Plaintiffs' application and their subsequent appeals based on his application of the scrivener's error doctrine and determination that the Step Formula was the correct formula for calculating benefits under the 1996 Plan. *Id*. 10-11.  The Plaintiffs filed their Complaint in this Court on January 3, 2005, and an Amended Complaint on April 14, 2005.


## II.  Analysis

### A.  Standard of Review for Summary Judgment

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing

law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.  The Plaintiffs' Motion for Summary Judgment

1.  ERISA Claim for Pension Benefits under the 1996 Plan (Count IV)

The Plaintiffs seek summary judgment on their claim for unpaid benefits under the 1996 Plan.  The Plaintiffs claim is pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides: "A civil action may be brought . . . by a participant or beneficiary . . .

to recover benefits due to him under the terms of his plan."   29 U.S.C. § 1132(a)(1)(B) (2005).   The Plaintiffs argue that they should have been paid more money under the Integrated Formula expressed in the 1996 Plan than what they received under the Step Formula.

The Defendants contend that the Integrated Formula was not properly adopted in the 1996 Plan, and Defendant Bragg's decision to correct the 1996 Plan may only be reviewed for an abuse of his discretion as the Plan's administrator under the 1996 Plan.

The parties agree that the 1996 Plan is a pension plan defined and regulated by ERISA.   29 U.S.C. §§ 1002-1003. Although "a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108-09 (1989)(citation omitted).   As a general rule, benefits determinations based on a plan administrator's interpretations are reviewed *de novo* according to "the terms of the plan and other manifestations of the parties' intent."   *Id*. at 112-13. But if "a plan by its terms confers discretion on the plan's administrator to interpret its provisions and the administrator acts reasonably within the scope of that discretion, courts defer to the administrator's interpretation."   *Colucci v. AGFA Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005).

The 1996 Plan grants the plan administrator:

the power and discretion to construe the terms of the Plan
and to determine all questions arising in connection with
the administration, interpretation, and application of the
plan. . . . The Administrator may establish procedures,
*correct any defect*, supply any information, or reconcile any
inconsistency in such manner and to such extent as shall be
deemed necessary or advisable to carry out the purpose of
the Plan . . .

Def's' Mot. for Summ. J., Ex. 3 ¶ 2.6 (emphasis added).  The

Defendants argue that the power to "correct any defect" granted

by the 1996 Plan gives the Plan's administrator the power to

reform the 1996 Plan for what the Defendants allege is a

scrivener's error.

Defendant Bragg's decision to reform the formula stated in

the 1996 Plan for a scrivener's error was a legal decision that

the Court reviews *de novo*.  The deferential standard of review is

a reflection of the judiciary's recognition that plan

administrators possess a "greater institutional competence . . .

relative to our own within their area of expertise." *Johannssen*

*v. District No.1-Pacific Coast District, MEBA Pension Plan*, 292

F.3d 159, 169 (4th Cir.  2002).  That "area of competence is in

the application of plan terms to the factual circumstances of

particular claims." *Id*.  But "legal questions are appropriate

terrain for the courts, not plan administrators, and when

eligibility determinations turn on questions of law [the Fourth

Circuit has] not hesitated to apply a *de novo* standard of

review." *Id*.

ERISA plans are contractual documents between an employer and its employees, and their interpretation is "governed by established principles of contract and trust law." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000); *Audio Fidelity Corp. v. Pension Benefit Guar. Corp.,* 624 F.2d 513, 517 (4th Cir. 1980).  A court of equity can reform a contract to correct a mutual mistake based on parol evidence, or, in the case of a unilateral mistake, if there is parol evidence of fraud by the other contracting party.  *Audio Fidelity Corp.,* 624 F.2d at 518.

The Fourth Circuit considered the reformation of the terms of an ERISA plan for an alleged scrivener's error in *Gamble v. Group Hospitalization & Medical Services, Inc.*, 38 F.3d. 126, 128-31 (4th Cir. 1994).  In its course of finding that the plan at issue was not governed by ERISA, the court considered the parol evidence offered by the party contending a scrivener's error in the plan's terms, but found no evidence to support the contention.  *Id.* at 130.  Although the court did not find it necessary to determine whether it should apply the principles of mistake in the ERISA context, it stated its concerns:

> Both state law and ERISA cases manifest a strong policy that plans be in writing, and for good reason.  The parties and beneficiaries should be entitled to plan their financial affairs with some certainty about that to which they are entitled, and fiduciaries should be guided clearly in the administration of plans by a definitive writing and not by the vagaries of oral understandings.

*Gamble v. Group Hospitalization & Medical Services, Inc.*, 38 F.3d 126, 131 (4th Cir. 1994).

The Defendants urge the Court to follow *Int'l Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL-CIO v. Murata Erie N. America, Inc.,* 980 F.2d 889 (3d Cir. 1992) ("*Murata*"), in which the Third Circuit held that "[d]espite [the] potential tension with a statutory purpose of ERISA, [it] believe[d] that the scrivener's error doctrine [was] appropriate in [the] particular case." *Id*. at 907. The particular situation that the Third Circuit found warranted a reformation occurred after an omission in an amendment to the plan, which caused: (1) a windfall to the plan's participants that (2) a reading of the plan would not have led them to reasonably anticipate. *Id.* The Third Circuit reasoned that the reformation would therefore not interfere with ERISA's goal of providing clear Plan documents. *Id*.

More pertinent is the Ninth Circuit's decision in *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437 (1995). In *Cinelli*, the court held that "the application of the principles of mistake would be inconsistent with ERISA's strong preference for the written terms of the plan and the goal of ERISA to ensure that an employee's rights and obligations can be readily ascertained from the plan documents." *Id*. at 1445. The Ninth Circuit reasoned that, unlike in *Murata*:

> [T]he consideration of parol evidence as to the intent of
> the Board would be used to alter the unambiguous written
> terms of a formal plan document. . . . Those documents
> contain a clear statement of benefits and it would be
> inconsistent with the goal of ERISA to allow either the
> employee or employer to attack that statement on the basis
> of mistake."

*Id.*

Defendant Bragg erred in applying the doctrine of scrivener's error to reform the terms of the 1996 Plan.  The exceptional circumstances that permitted the application of the scrivener's error doctrine in *Murata* without offending the statutory purpose of ERISA are not present in this case.  A reasonable reading of the 1996 Plan would have led the Plaintiffs to anticipate that their benefits would be calculated using the Integrated Formula.  As in *Cinelli*, the 1996 Plan contains a clear statement of benefits.  Subjecting the parties of a plan to the "vagaries of oral understandings" when the terms of the plan are definite would undercut the necessary predictability that written plans are meant to ensure.  *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 857 (4th Cir.  1994).

As reformation of the 1996 Plan was not permissible, the Court looked to the Plan's terms as approved by the FRA Board in 1996, and reviewed Defendant Bragg's benefits determination for an abuse of discretion.  Although an ERISA plan might confer discretion on a plan administrator to interpret the terms of the plan, "the administrator is not free to alter the terms of the

10

plan or to construe unambiguous terms other than as written."
*Colucci*, 431 F.3d at 176.  "If a denial of benefits is contrary
to the clear language of the plan, the decision will constitute
an abuse of discretion."  *Lockhart v. United Mine Workers of
America 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993)
(citation and internal quotation marks omitted).

The material facts related to the Plaintiffs' claim for
benefits (Count IV) are not in dispute.  The 1996 Plan was
effective July 1, 1989, well before the Plaintiffs retired and
received lump-sum benefit distributions.  Def's Mot. for Summ.
J., Ex. 3 at 1.  The Defendants admit that: (1) the 1996 Plan
incorporated the Integrated Formula and was adopted in November
1996; (2) retiree benefits were not calculated in accordance with
the 1996 Plan, but rather according to the Step Formula; and (3)
the Plan would owe its beneficiaries more money under the
Integrated Formula.  DSF ¶¶ 13, 14, 20, 23.  When the Plaintiffs
applied for additional benefits under the Integrated Formula,
Defendant Bragg denied their requests and subsequent appeals
based on his erroneous application of the scrivener's error
doctrine; this is contrary to the clear language of the plan.
DSF ¶¶ 31-33.

Accordingly, the Plaintiffs' motion for summary judgment on

Count IV will be granted.[2]


2.   Improper Plan Amendment under ERISA (Count III)

The Plaintiffs also move for summary judgment on Count III

of their Amended Complaint, which alleges that the Defendants

violated ERISA under 29 U.S.C. § 1054(g).[3]  29 U.S.C. § 1054(g)

states in part:

> Decrease of accrued benefits through amendment of plan
>
> (1) The accrued benefit of a participant under a plan may
> not be decreased by an amendment of the plan, other than an
> amendment described in section 1082(c)(8) of this title.

29 U.S.C. § 1054(g) (2002).  The pertinent part of 29 U.S.C. §
1082(c)(8) states:

> No amendment described in this paragraph which reduces the
> accrued benefits of any participant shall take effect unless
> the plan administrator files a notice with the Secretary [of
> Labor] notifying him of such amendment and the Secretary has
> approved such amendment or, within 90 days after the date on
> which such notice was filed, failed to disapprove such
> amendment.

29 U.S.C. § 1082(c)(8) (2005).  The Plaintiffs allege that

Defendant Bragg did not obtain the Secretary of Labor's approval

---

[2] In their motion and response the Defendants reiterate
their argument that the period for the Plaintiffs to litigate
their claims for benefits has expired.  The Court refers the
Defendants to its rejection of that argument in its Memorandum
and Order of August 23, 2006, at page 12.

[3] The Plaintiffs' amended complaint also alleges a violation
of 29 U.S.C. 1054(h) as part of their Count III, but they do not
argue for a violation of that section of the ERISA statute in
their motion for summary judgment, and this Court has no need to
consider it to make its decision as to Count III.

to change the 1996 Plan's Integrated Formula to the Step Formula in the 2003 Plan.

The Defendants contend that the change to the Step Formula in the 2003 Plan was not an amendment of the more generous Integrated Formula in the 1996 Plan, but merely a reformation of the original plan for a scrivener's error.  As the Court has determined that Defendant Bragg erred in applying the equitable doctrine of scrivener's error, any change to the 1996 Plan that attempted to reduce accrued benefits and the rate of future benefit accrual was an amendment, not a reformation, and subject to the statutory requirements of 29 U.S.C. §§ 1054(g) and 1082(c)(8).

The Defendants have relied solely on their legal argument that the "amendment" was really just a "correction," and have not disputed the material facts presented by the Plaintiffs to support this claim.  Because approval of the amendment by the Secretary of Labor was never sought, the change to the Step Formula in the 2003 Plan was never effective under sections 1054(g) and 1082(c)(8).  Accordingly, the Plaintiffs' motion for summary judgment as to Count III will be granted.

C.  The Defendants' Motion for Summary Judgment

Having granted summary judgment to the Plaintiffs for Counts III and IV, the Court denies summary judgment to the Defendants

on those counts and considers their arguments on Counts I and II.

1.   ERISA Reporting and Disclosure Violation (Count I)

The Plaintiffs allege in Count I that Defendant Bragg has failed to produce requested copies of amendments made to the Plan in 1989 and 1994, and thus has violated 29 U.S.C. § 1132(c) of ERISA, which provides in part:

> (1) Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c) (2005).

In their motion for summary judgment, the Defendants do not challenge the allegation that Defendant Bragg failed to provide the requested documents, or that ERISA requires a plan administrator to furnish such documents.  Instead, the Defendants argue that the Plaintiffs are mistaken in believing that the alleged plan amendments ever existed, and that the Plaintiffs' own inability to find the alleged documents after full access to the Defendants' files proves that furnishing the information is reasonably beyond the control of the plan administrator.  In their opposition to summary judgment, the Plaintiffs only assert

14

facts in support of the existence of a 1989 amendment to the plan.  Thus the only material fact at issue is whether a 1989 amendment to the Plan existed that Defendant Brag had the power to produce.

The Plaintiffs offer as evidence IRS Forms 5500 for the years 1992 and 1993, signed by George R. Kaye, who was then serving on the National Board of Directors as the National Financial Secretary ("NFS") and the de facto administrator of the Plan.  Pls.' Resp., Ex. 6 at 15-17.  Both Forms 5500 state that "the date the most recent amendment was adopted" was July 1, 1989.  Pls.' Resp., Ex. 2, Dep. Exs. 37 and 38.  The Plaintiffs also offer: (1) a letter from Kaye to Defendant Bragg in which Kaye states his belief that the Plan was amended in 1989, based on his knowledge of the existence of a "1989 draft for amending the plan;"[4] (2) a transcript of the deposition of Defendant Bragg in which he states "in the NFS report for '89 . . . George [Kaye] says an amendment was prepared and sent to the IRS;" and (3) a written report to the 1989 FRA National Convention by the then Chairman of the Pension Committee, Mr. William G. McCarley, which states that "the original plan [had been] amended on several

_____

[4] There is a draft of a plan amendment with "1989" written on the cover page that mirrors the language of the approved 1996 Plan and that, like the 1996 Plan, is effective July 1, 1989. Def's Mot. for Summ. J., Ex. 10, Ex. A.  As the Defendants point out, the draft contains references to the Retirement Protection Act of 1994.  *Id*. at 6.

15

occasions."  Pls.' Resp., Ex. 4, Ex. F; Pls.' Resp., Ex. 2 at 247; Pls.' Resp., Ex. 4, Ex. E.

For the 1989 amendment to have been effective, it would have had to be adopted by the FRA Board as required by the 1985 Plan. Def's Mot. for Summ. J., Ex. 1 ¶ 10.1.  The Defendants assert that there is no record in the minutes of the FRA Board of the text of the alleged amendment or of its approval in 1989, and the Plaintiffs do not challenge this assertion.  The Plaintiffs have failed to provide the testimony of a witness with actual knowledge of the 1989 plan's adoption by the FRA Board.  The Defendants assert that Kaye, when deposed about the Forms 5500 he signed indicating a 1989 amendment, stated that he relied on the knowledge of the accountants who prepared the forms, and could not say personally whether the information on them was correct. Def's Mot. for Summ. J., 28 (*citing* Deposition of G. Kaye, 29-31).

There is little evidence that the amendment to the Plan was approved in 1989.  Even if a finder of fact could reasonably decide that such an amendment was approved, 29 U.S.C. 1132(c) does not hold a plan administrator liable if his failure to produce requested documents "results from matters reasonably beyond the control of the administrator."  29 U.S.C. 1132(c) (2005).  The Defendants point out that now, after discovery, the Plaintiffs have had full access to the records of the Plan, the

16

FRA, and the FRA's counsel, and the Plaintiffs themselves have been unable to find: (1) a 1989 amendment; (2) a witness with personal knowledge of one being in possession of the Defendants; or (3) any additional evidence of its existence.  The Court finds that, viewed in the light most favorable to the Plaintiffs, there is no evidence that the alleged 1989 amendment was reasonably within Defendant Bragg's control.  Accordingly, Defendants' motion for summary judgment as to Count I will be granted.

2.  Breach of Fiduciary Duty (Count II)

The Plaintiffs allege that, as the Plan's administrator, Defendant Bragg had a fiduciary duty to them as the Plan's participants, and that when he improperly amended the Integrated Formula in the 2003 Plan, he breached that duty by retroactively reducing their accrued benefits and failing to comply with ERISA. For relief of their injuries, the Plaintiffs specifically ask the Court to (1) enjoin the Defendants to either rescind the 2003 amendment to the Plan or not apply the amendment to the Plaintiffs; and (2) remove Defendant Bragg from his position as the Plan's administrator.[5]  Amended Compl. ¶ 146.

Under 29 U.S.C. § 1132(a):

A civil action may be brought . . .(3) by a participant [or]

---

[5] The Plaintiffs also request attorneys fees and costs and "such other and further relief as justice may require."  Amended Compl. ¶ 146.

> beneficiary . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a) (2005).

The Defendants move for summary judgment on Plaintiffs' claim.  Defendant Bragg's denial of benefits contrary to the terms of the 1996 Plan and the unauthorized amendment in the 2003 Plan are sufficient to preclude summary judgment on this count. But the Defendants also assert as affirmative defenses that the time for Plaintiffs' fiduciary claim has expired, and that the Plaintiffs lack standing.


i. Limitation of Actions for Fiduciary Breach

> Under 29 U.S.C. § 1113:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or . . .

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . .

29 U.S.C. § 1113 (1989).  The Plaintiffs' claim that Defendant Bragg breached his fiduciary duty is based on his actions related to the unauthorized amendment of the Plan.  Amended Compl. ¶¶

18

143-45.  The unauthorized amendment was first considered as an alternative to paying the Plaintiffs under the terms of the 1996 Plan at the special FRA Board of Directors meeting on July 9, 2002.  DSF ¶ 22.  The Plaintiffs filed their Amended Complaint on April 12, 2005.  Plaintiffs' claim is not time-barred.

ii.  Standing

The Defendants also argue that the Plaintiffs lack standing on this claim.  The Defendants contend that the Plaintiffs, now all retired and having received their lump sum benefits, cannot show how the relief requested can redress their injuries.  The Plaintiffs have not challenged the Defendants' standing argument in their response.

To prove he has standing to sue, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the defendant's conduct; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)(internal quotation marks and citations omitted).

The Plaintiffs' alleged injury in their fiduciary-breach claim is the non-payment of benefits resulting from the improper amendment in the 2003 Plan.  The 2003 Plan states that its amendment to the Plan is effective January 1, 2002.  Def's Mot.

for Summ. J., Ex. 4 at 1.  With the exception of Plaintiff
Charles Calkins ("Plaintiff Calkins"), all of the Plaintiffs
retired and received all of their benefits in the years before
the 2003 Plan became effective.  DSF ¶ 28; Pls.' Resp., Ex. 1,
Ex. 5.

While the parties do not provide an exact date for Plaintiff
Calkins' retirement, the Defendants state that he "retired after
the error became known," referring to their alleged discovery of
the integrated formula in the 1996 Plan, which was first reported
to the FRA by its accountants in March 2002.  DSF ¶¶ 20, 28.  As
the application of the improper amendment of the benefit formula
in the 2003 Plan would partly affect the calculation of Plaintiff
Calkins' benefits, he has standing to sue for an injunction.

With respect to the other seven Plaintiffs, it is not likely
that the relief requested in Count II will redress their injury
of unpaid benefits under the 1996 Plan.  Accordingly, Defendants'
motion on Count II will be denied as to Plaintiff Calkins, but
granted as to the remaining Plaintiffs.[6]

III.  Conclusion

For the reasons discussed above, the Plaintiffs' motion for
summary judgment on Counts III and IV will be granted, the

---

[6] The Court notes that the Defendants have not made a
standing argument on Plaintiffs' Count III, which requests
similar relief.

Defendants' motion for summary judgment will be granted as to

Count I and the claims of Plaintiffs James Cross, Jerry Butler,

Edward Huylebruck, James Lee, Heidi Schuller, Pamela Wells, and

Patricia Williamson on Count II, and denied as to the claim of

Plaintiff Calkins on Count II.


September 28, 2006                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge