```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
JAMES CROSS, et al.,
                                *
       Plaintiffs,
v.                              *      CIVIL NO.: WDQ-05-0001

FLEET RESERVE ASSOCIATION       *
PENSION PLAN, et al.,
                                *
       Defendants.
                                *

 *     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION AND ORDER

Plaintiffs James Cross, Jerry Butler, Charles Calkins, Edward Huylebruck, James Lee, Heidi Schuller, Pamela Wells, and Patricia Williamson sued the Fleet Reserve Association Pension Plan and Trust (the "Plan") and the Plan's administrator, Noel Bragg, under the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461. For the following reasons, the Defendants' motion for a stay of proceedings will be granted, and the Court will defer action on remaining matters pending the Defendants' appeal to the Fourth Circuit.


I.  Background

The Plaintiffs, all former employees of the Fleet Reserve Association ("FRA") and vested participants of the Plan, sued the Defendants for: (1) violating ERISA's reporting and disclosure

1

requirements (Count I); (2) breach of fiduciary duty (Count II); (3) violating ERISA's amendment and notification requirements (Count III); and (4) erroneously denying the Plaintiffs' claims for additional benefits (Count IV).

On September 28, 2006, the Court granted summary judgment for the Plaintiffs on Counts III and IV, and summary judgment for the Defendants on Count I and on Count II as to the claims of all the Plaintiffs save Charles Calkins.  Papers No. 64, 65.

On December 18, 2006, the Court granted summary judgment to the Defendants on Count II as to all Plaintiffs.  Papers No. 71, 72.  The December 18 Order also enjoined the Defendants to rescind the improper January 1, 2002 amendment and restatement of the Plan (the "2003 Plan"), ordered the Defendants to pay the Plaintiffs all benefits owed under the terms of the Plan, and awarded prejudgment interest.  The Court ordered the parties to confer to calculate the actual dollar amount of pension benefits owed, together with prejudgment interest, and to communicate the result to the Court within 30 days.

II.  Discussion

A.  The Defendants' Motion to Stay

The Defendants' motion seeks: (1) suspension of the injunction requiring the Defendants to rescind the 2003 Plan; and (2) a stay of execution of the monetary judgment without

requiring the Defendants to post a supersedeas bond.

1.  Stay of an Injunction Pending Appeal

Under Federal Rule of Civil Procedure ("Rule") 62(c), a court has the discretion to suspend an injunction pending an appeal of the judgment granting the injunction.  Fed. R. Civ. P. 62(c).  In considering a stay, the court weighs: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *accord Long v. Robinson,* 432 F.2d 977, 979 (1970).

a.  Likelihood of the Defendants' Success on the Merits

The Defendants argue that their appeal has a strong likelihood of success because the Fourth Circuit has not decided whether the doctrine of scrivener's error may be invoked by a plan administrator to alter the terms of an ERISA plan; they note that the Internal Revenue Service, the Department of Labor, and other circuits have permitted pension plan reformations because of scrivener's errors.  Defs.' Mem. 3; Defs.' Reply 6-8.  The Defendants also argue that the Plaintiffs failed to join the only

3

parties authorized to rescind the 2003 Plan: the FRA or its Board
of Directors.  Although not argued in their motions for summary
judgment[1] or amendment, the Defendants now assert that the
Plaintiffs lacked standing to pursue their claim of an improper
Plan amendment under 29 U.S.C §§ 1054(g) and 1082(c)(8) in Count
III.  Defs.' Reply 5.  Also, the Defendants have renewed their
argument that all the Plaintiffs' claims except Calkins' are
time-barred because the Plaintiffs failed to initiate
administrative appeals within the Plan's time limits.  Defs.'
Reply 9-11.

    The novelty of an issue before an appellate court does not
weigh for or against the likelihood of an appellant's success,
see *Goldstein v. Miller*, 488 F. Supp. 156, 173 (D. Md. 1980)
(stay should not be entered "every time a case presents difficult
questions of law"), *aff'd*, 649 F.2d 864 (4th Cir. 1981), *cert.*
*denied*, 454 U.S. 828 (1981), and the Fourth Circuit is not
required to defer to opinions of the Internal Revenue Service or
the Department of Labor that are based on general common law
principles.  *W. Va. Highlands Conservancy, Inc. v. Norton*, 343
F.3d 239, 245 (4th Cir. 2003).  Although the scrivener's error
case law from other circuits did not persuade this Court, it is
possible that the Fourth Circuit may be more receptive to those

---

[1] As noted by the Court in its 28 September, 2006 Memorandum
Opinion.  Paper No. 64 at 20 n.6.

4

authorities.  The Defendants' belated argument on the Plaintiffs' standing for Count III and their most recent statute-of-limitation argument, withheld until the Defendants' Reply, are not totally specious.

Together, these arguments fall short of the "strong showing" of probable success called for in *Hilton.  Hilton,* 481 U.S. at 776.  However, the remaining three factors favor a stay for the Defendants.  *See Goldstein*, 488 F. Supp. at 176 (appropriate for court to balance the four factors for granting stays pending appeal).

b.  Risk of Irreparable Harm to the Defendants

The Defendants argue that the risk of irreparable harm to the Plan by the injunction is significant.  They contend that, should the Fourth Circuit reverse this Court's decision, any subsequent amendment reinstating the terms of the 2003 Plan would cause a reduction of accrued benefits and disqualify the Plan for favorable tax treatment as a "qualified trust" pursuant to I.R.C. § 411(d)(6).  Defs'. Mem. 4; Defs.' Reply at 6.  The Defendants also assert that rescission of the 2003 Plan will cause the Plan to lose its status as a qualified trust under I.R.C. § 401(a), because the Plan prior to the 2003 Plan lacks provisions currently required by § 401(a).  Defs'. Mem. 4; Defs.' Reply at 5 n.4.

5

Although the Plaintiffs discount these concerns as "theoretical," the risks to the Plan's favorable tax status are real and the Plan's resulting inability to meet all its obligations to its participants and beneficiaries could be permanent.

c.  Risk of Substantial Harm to the Plaintiffs

The risk of substantial harm to the Plaintiffs from a suspension of the Court's injunction is nil.  As each Plaintiff retired before the 2003 Plan was adopted, none of the Plaintiffs' benefit calculations was affected by the 2003 Plan's benefit-formula change.  Thus, whether the 2003 Plan is rescinded now or after the appeal is of no consequence to the Plaintiffs.

d.  The Public Interest

The Defendants argue that suspending the injunction will have no negative impact on the public interest, and that public policy favors protecting pension plan assets.  They further contend that a stay will minimize the risk that non-party Plan participants and beneficiaries will be harmed by adverse tax consequences or unnecessary costs to the Plan should the Court's decision be reversed.  The Plaintiffs' offer no arguments on an injunction suspension's impact on the public interest.

The public interest, and the interests of non-party

participants and beneficiaries of the Plan, favor suspension of the injunction.  Although the Defendants' likelihood of success on appeal is not high, the balance of factors favors a stay. Accordingly, the Court will stay its order rescinding the 2003 Plan pending the Defendants' appeal.

2.  Stay of Execution on the Court's Monetary Judgment

The Defendants also seek a stay of the Court's monetary award for the Plaintiffs without a supersedeas bond.  The Defendants argue that, because an express amount was not included in the Court's December 18, 2006 Order, the procedural rule for a stay of a monetary judgment, Rule 62(d), is inapplicable, and instead Rule 62(c) should apply.  In the alternative, the Defendants seek the Court's relief from the usual bond requirement.  They also assert that, if a supersedeas bond were required, they would be unable to determine its face value because the amount of prejudgment interest remains undetermined.

Although the parties have been unable to agree on an amount of prejudgment interest, the Court has specified the Defendants' monetary liability and determined that each Plaintiff is entitled to prejudgment interest.  Paper No. 71 at 8; Paper No. 72 ¶ 4. Thus, the Defendants' arguments for an injunctive stay under Rule 62(c) and the four *Hilton* factors are irrelevant.

Rule 62(d) permits a stay of execution on a monetary

judgment by procuring a supersedeas bond to secure the judgment while an appeal is pending.  Fed. R. Civ. P. 62(d).  "The stay is effective when the supersedeas bond is approved by the court." *Id*.  Local Rule 110(a) states that "[u]nless otherwise ordered by the Court, the amount of any supersedeas bond filed to stay execution of a money judgment pending appeal shall be 120% of the amount of the judgment plus an additional $500 to cover costs on appeal."  D. Md. R. 110(a).

Although no Fourth Circuit authority is found, other circuits have recognized the district court's "inherent power" to determine the amount of a supersedeas bond or to permit other forms of security for monetary judgments on appeal. *E.g.*, *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002); *Dillon v. City of Chicago,* 866 F.2d 902, 904 (7th Cir. 1988) (district court may waive supersedeas bond); *accord U.S. v. Certain Real and Personal Property Belonging to Hayes,* 943 F.2d 1292, 1296 (11th Cir. 1991); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2905 (2d Ed. 2006).

When determining whether to waive a supersedeas bond, a court may consider:

> (1) the complexity of the collection process; (2) the . . . time required to obtain a judgment after it is affirmed on appeal; (3) . . . the availability of funds to pay the judgment; (4) whether . . . cost of a bond would be a waste of money; and (5) whether . . . a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904-05 (citations and internal quotation

marks omitted).

The Defendants have presented undisputed evidence that, as of December 31, 2006, the Plan held assets of $2.24 million, and its liabilities were conservatively estimated at $1.7 million. Defs.' Mot. Ex. 1 (affidavit of Robert S. Dezube, the Plan's actuary) at 3-4.  The Defendants estimate a final monetary award and prejudgment interest of $350,000 to $500,000, and a requisite supersedeas bond premium of ten percent ($35,000 to $50,000). Defs.' Reply Ex. 1 (affidavit of counsel, Joseph Semo).

The Plaintiffs contend that their judgment is not secure, despite the Plans' surplus assets, because the FRA is free to terminate the Plan at any time and collect that surplus, leaving the Plan no assets to meet its liabilities to the Plaintiffs. Pls.' Opp'n 9, (*citing* Defs.' Mot. Summ. J. (Paper No. 43) Ex. 3 (Nov. 25, 1998 Fleet Reserve Ass'n Pension Plan) § 9.1(c)).

In response, the Defendants contend that the Plan would be required by ERISA[2] to provide at least 60 day's notice to the Plaintiffs prior to any such termination, and that this Court could lift its stay upon such notice.  Defs.' Reply 3-4.

Applying *Dillon*, the Court sees no indication that the Plaintiffs' judgment collection would be abnormally complex or time-consuming.  The Court is also confident that the Defendants have sufficient surplus assets to satisfy the judgment, with

---

[2] 29 U.S.C. § 1341; 29 C.F.R. §§ 4041.21, 4041.23.

interest, should they fail on appeal.  Furthermore, the bond premium would be an unnecessary waste of the Plan's assets. There is no indication of the Plan's liability to other creditors.

As to the possibility of the FRA terminating the Plan before execution on the judgment, the Court will require the Defendants to provide at least 60 days of notice prior to any such termination, to permit the Plaintiffs time to petition the Court to lift its stay.

Accordingly, the Court will suspend the requirement for the supersedeas bond and stay all enforcement of the monetary judgment pending the Defendants' appeal.


B.  Remaining Matters

Remaining for the Court's action are the Plaintiffs' motions for attorney's fees and to strike the Defendants' opposition to their motion for attorney's fees, and the parties' requests for instruction on calculating prejudgment interest.  The Court will defer ruling on the Plaintiff's motions pending appeal.

III.   Conclusion

For the reasons stated above, the Defendants' motion to stay will be granted, and the Court will defer action on all remaining matters pending the appeal.


February 27, 2007                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

11