IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JAMES CROSS, *et al.*

    Plaintiffs,

        v.            CIVIL NO.:  WDQ-05-0001

FLEET RESERVE ASSOCIATION
PENSION PLAN, *et al.*

    Defendants.

MEMORANDUM OPINION

James Cross, Charles Calkins, Edward Huylebroeck,[1] James Lee, Jerry Butler, Pamela Wells, Patricia J. Williamson, and Heidi Schuller sued Fleet Reserve Association Pension Plan ("the Plan") and the Plan's administrator, Noel Bragg, under the Employment Retirement Income Security Act of 1974 ("ERISA").[2] Pending are the Plaintiffs' motions for attorneys' fees (Paper Nos. 78, 97, 137) and the Defendants' motion to strike (Paper No. 143). For the following reasons, the motion to strike will be granted, and the motions for attorneys' fees will be denied.

---

[1] On August 21, 2007, the executor of Edward Huylebroeck, Jr.'s estate, Doreen Patricia Huylebroeck, was substituted as plaintiff for the deceased. Paper No. 121.

[2] 29 U.S.C. §§ 1001, *et seq.*

1

I.   Background

The Plaintiffs, former employees of the Fleet Reserve Association ("FRA") and vested participants and beneficiaries of the Plan, sued the Defendants for: (1) violating ERISA's reporting and disclosure requirements; (2) breach of fiduciary duty; (3) violating ERISA's notification requirements; and (4) erroneously denying the Plaintiffs' claims for additional benefits.

The FRA adopted the Plan in 1972. Paper No. 64 at 2. Its terms were restated in 1985 (the "1985 Plan") to provide that accrued benefits would be calculated using a "Step Formula."[3] *Id*. at 2. In November 1996, the FRA board of directors amended the Plan (the "1996 Plan") to change the formula for calculating accrued benefits (the "Integration Formula").[4] *Id*. at 2-3. The Plaintiffs retired and received lump sum benefits between May 1996 and August 2002. *Id*.

In March 2002, the Plan learned from its actuary that accrued benefits paid had been calculated using the Step Formula rather than the Integration Formula in the 1996 Plan. *Id*. Bragg investigated and concluded that the Integration Formula's

---

[3]  The Step Formula provides for a lesser rate of benefit accrual for the portion of a participant's compensation that exceeds a stated amount (the "integration level"). Paper No. 64 at 2.

[4]  The Integration Formula provided a greater rate of benefit accrual for compensation in excess of the integration level. *Id*. at 3. The 1996 Plan was effective July 1, 1989. *Id*.

2

inclusion in the 1996 Plan was a mistake.  Paper No. 132 at 6. Bragg explained this mistake to the FRA Board at a special meeting in July 2002, and the FRA announced the scrivener's error at its National Convention later that year.  *Id*.  In October 2003, the Internal Revenue Service ("IRS") granted Bragg's request to "correct" the Plan for a "scrivener's error" and allowed the Plan to revert to the Step Formula for tax purposes.  *Id*.

On April 24, 2004, the Plaintiffs applied for additional benefits owed under the 1996 Plan Integration Formula.  *Id*.  The Plan denied the Plaintiffs' requests.  Paper No. 20 at 12.

On January 3, 2005, the Plaintiffs sued the Defendants. Paper No. 1.[5]  On September 28, 2006, this Court granted summary judgment for (1) the Defendants on Count I and on Count II as to the claims of all the Plaintiffs except Charles Calkins, *id*. at 14-20, and (2) the Plaintiffs on Counts III and IV, holding that "Bragg erred in applying the doctrine of scrivener's error to reform the terms of the 1996 Plan" (the "Summary Judgment Order").  Paper No. 64 at 10, 13.

On December 18, 2006, this Court amended its judgment to grant the Defendants summary judgment on Count II as to all Plaintiffs (the "First Reconsideration Order").  Paper No. 72.

---

[5]  On August 23, 2005, this Court denied the Defendants' motion to transfer venue and rejected their statute of limitations defense.  Paper No. 21.

On January 8, 2007, the Defendants appealed.  Paper No. 75.  On January 16, 2007, the Plaintiffs filed a motion for attorneys' fees.  Paper No. 78.  On February 27, 2007, this Court granted the Defendants' motion for a stay of execution pending appeal (the "Stay Order"), recognizing that:

> [a]lthough the scrivener's error case law from other circuits did not persuade this Court, it is possible that the Fourth Circuit may be more receptive to those authorities.  The Defendants' belated argument on the Plaintiffs' standing for Count III and their most recent statute-of-limitation argument, withheld until the Defendants' Reply, are not totally specious.

Paper No. 91 at 4-5.

On March 27, 2007, the Fourth Circuit dismissed the Defendants' appeal as premature.  Paper No. 93.  On July 3, 2007, this Court granted summary judgment to the Defendants on Count III and held that the Plaintiffs' claims were not time-barred (the "Second Reconsideration Order").[6]  Paper No. 109.

The Defendants, on July 20, 2007, and the Plaintiffs, on August 2, 2007, appealed.  Paper Nos. 113, 117, 119.  On January 28, 2008, this Court denied reconsideration of Plaintiffs'

---

[6] The Defendants asserted that the claims were time-barred by the statute of limitations--a defense previously raised and rejected in the venue proceedings and on summary judgment--and raised the new argument that the claims were time-barred under the administrative provisions of the 1996 plan.  Paper No. 101.  The Court determined that the administrative limitations argument had been waived because it had not been raised in the answer or on summary judgment.  Paper No. 109 at 8.

motion for attorneys' fees (the "Third Reconsideration Order"). Paper No. 126 at 4-5.[7]

On July 24, 2009, the Fourth Circuit (1) affirmed the award of summary judgment to the Defendants on Counts I, II, and III, and to the Plaintiffs on IV; and (2) vacated the denial of attorneys' fees, holding that the Plaintiffs were not time-barred because the December 26, 2006 Order was "ambiguous" about filing deadlines.  Paper No. 132 at 4, 13, 31.  On September 9, 2009, the Plaintiffs renewed their motion for attorneys' fees and requested supplemental fees for their attorneys' work on the appeal.  Paper No. 137.  On November 11, 2009, the Defendants filed a motion to strike Exhibit 3 and its related arguments from the Plaintiffs' supplemental motion for attorneys' fees. Paper No. 143.

II. Analysis

    A.   Motion to Strike

The Defendants seek to strike Exhibit 3--an offer they made to the Plaintiffs to settle the attorneys' fees matter--and the arguments related thereto from the Plaintiffs' reply in support of the motion for attorneys' fees.  Paper No. 143 at 1-2.  The Plaintiffs argue that the settlement offer is admissible because

---

[7]  On February 8, 2008, the Plaintiffs filed a second notice of appeal, which was consolidated with its pending appeal.  Paper Nos. 129, 131.

5

it was not offered to prove liability or damages but merely to show the Defendants' ability to pay. Paper No. 144 at 1-2.

Under Fed. R. Evid. 408, evidence of a settlement offer is inadmissible "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). But "[t]his rule does not require exclusion if the evidence is offered for purposes not prohibited," such as "proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution." *Id*. at 408(b). Generally, "settlement offers are only inadmissible when offered to prove liability or damages." *Coakley v. Williams Constr. Inc.*, 973 F.2d 349, 353-54 (4th Cir. 1992).

The adverse parties' ability to pay an award is one of the factors considered to determine whether the prevailing party in an ERISA suit may recover attorneys' fees. *See Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990). Because the Defendants' ability to pay has direct bearing on their liability for the Plaintiffs' attorneys' fees, the settlement offer has been offered to show liability and must be excluded. Accordingly, the Defendants' motion to strike

Exhibit 3 will be granted, and this Court will not consider the arguments in the Plaintiffs' reply related to that agreement.[8]

B.   Motion for Attorneys' Fees

Having prevailed on their ERISA claim for additional pension benefits, the Plaintiffs have requested attorneys' fees. The Defendants argue that the Plaintiffs are not entitled to attorneys' fees under ERISA and that the amount of fees requested is unreasonable.

Section 502 of ERISA gives the Court discretion to award reasonable attorneys' fees and costs to successful beneficiaries in an action involving delinquent contributions. *See* 29 U.S.C. § 1132(g)(1) (2006).[9]  But the prevailing party in an ERISA action "does not, by prevailing alone, establish a presumption of entitlement to an award of fees." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).  "Only unusual circumstances justify such an award in an ERISA case." *See Am. Med. Sec., Inc. v. Larsen*, 31 F. Supp.2d 502, 505 (D. Md. 1998).

---

[8]   Contrary to the Plaintiffs' contention, a motion to strike is the correct procedural mechanism for a party seeking to exclude evidence on the record from a court's consideration in a particular matter.  *See* Fed. R. Evid. 103.

[9]   In an ERISA action by a participant, beneficiary, or fiduciary for delinquent contributions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "[O]nly a prevailing party is entitled to consideration for attorneys' fees in an ERISA action." *Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997).

The Fourth Circuit's five-factor test to determine when such an award is appropriate requires consideration of:

(1) the degree of the opposing parties' culpability or bad faith;
(2) the opposing parties' ability to satisfy an award of attorneys' fees;
(3) whether such an award would deter other persons acting under similar circumstances;
(4) whether the parties requesting attorneys' fees sought to benefit all of the ERISA plan participants and beneficiaries or to resolve a significant legal question regarding ERISA; and
(5) the relative merits of the parties' positions.

*Reinking*, 910 F.2d at 1217-18 (*quoting Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)), *overruled on other grounds by Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017 (4th Cir. 1993). No one factor is decisive; instead, the test "constitute[s] the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer*, 12 F.3d at 422.[10]

1. Defendants' Culpability or Bad Faith

"Culpability connotes wrongful conduct that is not intentional or deliberate . . . [and] can be found where a plan's decision is discernibly against the weight of the evidence." *Jani v. Bert Bell/Pete Rozelle NFL Player Retirement*

---

[10] "The district court is required to address all [five factors] in order to ensure an adequate basis for review." *Johannssen v. Dist. No. 1—Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 179 (4th Cir. 2002). In a particular case, other considerations may also be relevant. *Quesinberry*, 987 F.2d at 1029.

*Plan*, 2005 U.S. Dist LEXIS 44331, *2-3 (D. Md. Nov. 7, 2005) (internal quotations omitted).[11]  Bad faith involves "deliberate misconduct to harm another or advance one's self-interest"; "not every abuse of discretion constitutes bad faith." *Id*. at *3.[12]  "[M]ere negligence or error" is insufficient to show culpability or bad faith.  *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d

---

[11]  *See also Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (finding culpability when plan's "decision was arbitrary and capricious and based largely on the opinions of the doctors in its claim department"); *Phillips v. Brink's Co.*, 2009 WL 3681835, at *2 (W.D. Va. Oct. 31, 2009) (holding that a breach in fiduciary duty is evidence of culpability); *Porter v. Hartford Life & Accident Ins. Co.*, 2009 WL 1940520, at *3 (E.D. Ark. July 2, 2009) (holding that an administrator's failure to discover and long delay in correcting an error was culpable conduct).  Here, there is no evidence that the Defendants' denial of addition benefits to the Plaintiffs was arbitrary and capricious or that they breached their fiduciary duties to the Plaintiffs by invoking the scrivener's error defense.  The Defendants also discovered the error and timely reported the miscalculation of benefits to the FRA Board and beneficiaries.

[12]  *See also Johannssen*, 292 F.3d at 179 (finding bad faith when a plan administrator "clearly abused his discretion" by applying a plan amendment in "a biased manner reflecting on-going political fight[s] and litigation"); *Vanegas v. Bd. of Tr. of the Health and Welfare Fund for the Int'l Union of Operating Eng'rs, Local 99 and 99A*, 2008 WL 3539662, at *1 (party did not act in bad faith when it rescinded payment on reasonable belief that it was not liable and the issue was "a relatively close one"); *O'Bryhim v. Reliance Standard Life Ins. Co.*, 1999 U.S. App. Lexis 19232, at *25 (4th Cir. Aug. 16, 1999) (finding bad faith when a party ignored the district court's previous findings of fact).  Here, there is no evidence that the Defendants applied their scrivener's error defense in a biased manner or that they ignored this Court's findings of fact in their motions for reconsideration or on appeal.

383, 390 (4th Cir. 2006) (*quoting Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995)).

To show the Defendants' culpable and bad faith conduct, the Plaintiffs contend that (1) case law in the Fourth Circuit did not support a "scrivener's error" defense; (2) the Defendants made legal arguments that were repetitious, untimely, and contradictory; (3) facts pled to support the Defendants' arguments were false; and (4) Bragg knew that he could not invoke the scrivener's error defense to deny the Plaintiffs' benefits under the 1996 Plan but used it anyway to further his own career.  Paper No. 97 at 14-20.  These arguments do not establish bad faith or culpable conduct by the Defendants.

Though the Defendants' reliance on the scrivener's error defense was improper, it was not against the weight of the evidence or deliberate misconduct.  This Court implicitly recognized the lack of definitive Fourth Circuit case law on point in the Stay Order, which acknowledged that "although the scrivener's error case law from other circuits did not persuade this Court, it [was] possible that the Fourth Circuit [would] be more receptive to those authorities."  Paper No. 91 at 4-5.  The Fourth Circuit's July 24, 2009 Decision also relied heavily on *Blackshear v. Reliance Std. Life Ins. Co.*, which was not decided

10

until December 7, 2007, years after this litigation commenced. 509 F.3d 634 (4th Cir. 2007).[13]

In addition to the scrivener's error defense, the Defendants asserted arguments challenging the Plaintiffs' standing, the statute of limitations, administrative limitations, and the standards of proof.  The Plaintiffs contend that many of these arguments were conflicting, untimely, and repetitious.  Although several of the Defendants' arguments were misguided, none rose above the level of negligence or error to become culpable or bad faith conduct.[14]  As acknowledged by this

---

[13]  The Plaintiffs argue that the Fourth Circuit's decision in *Blackshear* made it clear that the scrivener's error defense would not be available to the Defendants in this case.  *See* Paper No. 137 at 12-13.  But *Blackshear* was decided almost five months after the Defendants filed their second notice of appeal and was factually distinguishable.  Thus, the Defendants did not engage in culpable or bad faith conduct by maintaining their appeal to the Fourth Circuit after that case was decided.  *See Gower v. AIG Claim Services, Inc.*, 2007 WL 2327116, at *3 (finding no culpability or bad faith when the defendants "made good faith arguments on issues that the Fourth Circuit had not directly addressed" and a case on point was not decided until two months after the plaintiff filed suit).

[14]  The Plaintiffs have argued that the Defendants wrongfully filed a premature appeal following the First Reconsideration Order.  Because that Order indicated that the case was "closed," the Plaintiffs' appeal, although filed in error, was not culpable or bad faith conduct.  The Plaintiffs have also argued that the Defendants' second appeal asserted "untenable legal positions" and "distort[ed] the record evidence."  Paper No. 137 at 13.  Although the Defendants raised arguments regarding the IRS determination and the timeliness of the Plaintiffs' suit, the main issue on appeal was the application of the scrivener's error defense and equitable reformation.  Because the Defendants' main argument, although unsuccessful, was not

11

Court's Stay Order, "the Defendants' belated argument on the Plaintiffs' standing for Count III and their . . . statute-of-limitation argument, withheld until the Defendants' Reply, [were] not totally specious."  Paper No. 91 at 5.  The Plaintiffs have also argued that the Defendants presented false statements during the internal claims and litigation process.  Paper No. 97 at 17-18.  But, after reviewing the allegedly "false" statements made by the Defendants, this Court was unable to conclude that they are false.[15]

The Plaintiffs have also argued that Bragg engaged in culpable and bad faith conduct because he knew "as early as May 21, 2002, that the Plan could not raise a scrivener's error defense because he had been so advised by attorneys for the FRA."  Paper No. 97 at 19.[16]  The Plaintiffs have failed to

---

meritless, the Defendants did not engage in bad faith or culpable conduct by bringing an appeal that raised additional arguments.

[15]  The Plaintiffs provide several examples of allegedly false statements but offer no evidence to establish culpable or bad faith conduct.  *See* Paper No. 97 at 17-18; Paper No. 102 at 8-9.

[16]  The Plaintiffs have also argued that Bragg investigated the benefits calculation error while he was a candidate for national financial secretary of the FRA Board of Directors, who were hostile to the Plaintiffs' benefit claims.  *See* Paper No. 102 at 8.  But they have failed to provide evidence that Bragg's candidacy influenced his decision to invoke the scrivener's error defense.

provide factual support for this assertion,[17] and the Defendants have argued that Bragg based his conclusion that there had been a scrivener's error on the "advice of counsel."[18]  Further, the argument that Bragg "knew" the scrivener's error defense could not be raised is unsupported by the contentious litigation required to resolve that issue in this case.

As plan administrator, Bragg did not try to hide the benefits calculation error but promptly investigated the issue and reported his findings to the FRA Board.  Soon after that report, the mistaken inclusion of the Integration Formula in the 1996 Plan was disclosed at the FRA National Convention.  Bragg promptly informed the IRS of the mistake and was allowed to use the Step Formula to avoid tax penalties because of a scrivener's error.  Although the IRS's authority is limited to tax matters, its acceptance of the scrivener's error defense indicates that the Plan acted in good faith when it denied the Plaintiffs' claim for additional benefits on that grounds.

Here, the Plaintiffs sought to recover benefits that they did not know were owed until the Plan promptly disclosed its error in calculation under the 1996 Plan.  As the Defendants promptly disclosed their mistake and pursued merited arguments in this litigation, the Plaintiffs have failed to show that the

---

[17]  *See* Paper No. 97 at 19-20; Paper No. 104 at 8.

[18]  See Paper No. 98 at 4.

Defendants' conduct was culpable or in bad faith, and this factor weighs against an award.

        2.    Defendants' Ability to Satisfy Award

On this factor, a court must consider "the type of payor and the nature of the ERISA claim." *Quesinberry*, 987 F.2d at 1030 n.12.[19] When an award would deplete plan assets, the Court looks more skeptically at a claim for attorneys' fees.[20]

Here, the payors are plan administrator Bragg and the Plan itself. Because Bragg's ability to pay has not been shown, his potential contribution or non-contribution weighs neutrally. As to the Plan's ability to pay, the parties have presented differing estimates of the current value of the Plan's assets and liabilities[21] but appear to agree that: (1) the Plan had sufficient assets to pay the Plaintiffs' reasonable attorneys' fees when originally requested in spring 2007; (2) the Plan had

---

[19] Some courts have required evidence of "the ability of *both* parties to pay an award." *Larsen*, 31 F. Supp. at 506. Here, because the Plaintiffs' ability to pay is unknown, that consideration weighs neutrally.

[20] When a "fee award would be paid out of the plan assets and not 'out of the pockets of the people responsible for the denial of benefits' the ability-to-pay factor might favor a denial of attorneys' fees." *Quesinberry*, 987 F.2d at 1030 n.12.

[21] Based on the information and affidavits provided, this Court cannot determine which parties' estimate of the current funding of the Plan is accurate. It is, however, clear that the assets and liabilities of the Plan are consistently changing and the assets have been reduced since the parties filed their original attorneys' fees memorandums in spring 2007.

paid $592,919 in attorneys' fees for the Defendants as of April 22, 2009;[22] (3) the Pension Plan Protection Act of 2006 would require the FRA to make contributions to amortize unfunded plan liabilities over the next seven years;[23] and (4) the FRA is currently in a strong financial position.[24]  If the Plan funds are reduced through an award of attorneys' fees to the Plaintiffs, the FRA will be required to pay into the Plan to ensure that the Plan funds are sufficient to cover its liabilities.[25]  Because the Plan's funds were sufficient when the Plaintiffs' originally requested attorneys' fees, the Plan's assets were reduced by payment of the Defendants' legal fees, and the FRA can and must pay into the Plan to cover any shortfall that might result from payment of attorneys' fees out of the Plan assets, this factor weighs in favor of an award.

      3.   Award as Deterrence

An award of attorneys' fees in this case would encourage precision and care in the drafting of plan terms and deter

---

[22]  Paper No. 141 at Ex. C to Ex. 1.

[23]  Marc L. Pushkin Aff. ¶ 5, Oct. 26, 2009 (Paper No. 141 at Ex. 2).

[24]  Paper No. 141 at Ex. B to Ex. 1.

[25]  See Johannssen v. Dist. No. 1, 2001 WL 770987, at *2 (D. Md. 2001), rev'd in part on other grounds, 292 F.3d 159 (4th Cir. 2002) (holding that the ability to pay factor favored an award when participating employers could be required to cover the Plan's attorneys' fees).

future administrators from denying benefits on the grounds of a scrivener's error without applying to the court for equitable reformation of an ERISA plan.  But "honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is [involved]."  *Larsen*, 31 F. Supp. 2d at 506 (*quoting Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996).  Because there has been no showing of deliberate misconduct by the Defendants, this factor weighs only slightly in favor of an award.

       4.   Benefit to All Plan Participants and Beneficiaries

Neither party asserts that this suit resolved a significant question regarding ERISA law.  Because this litigation directly benefits only the named Plaintiffs,[26] this factor weighs against an award.

       5.   Relative Merits of the Parties' Positions

When assessing the relative merits, the Court must consider more than merely who won or lost on the claims.  *Larsen*, 31 F. Supp. 2d at 507.  Here, the main issue in this case--equitable reformation of a scrivener's error--was resolved in the Plaintiffs' favor; but, the Defendants were granted summary

---

[26] The Plaintiffs have not shown that any Plan beneficiaries other than themselves may recover undisbursed benefits under the 1996 Plan's Integration Formula.

judgment on three of the four counts against them. Because the Defendants prevailed on several claims and their arguments for equitable reformation were not devoid of merit,[27] this factor is neutral.

As the balance of the five factors weighs against an award, these are not the "unusual circumstances" justifying an award of attorneys' fees, and the Plaintiffs' motion will be denied.[28]

III. Conclusion

For the reasons stated above, the Defendants' motion to strike will be granted, and the Plaintiffs' motions for attorneys' fees will be denied.


February 16, 2010                     _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

---

[27] *Gower*, 2007 WL 2327116, at *3 (finding this factor neutral when "the defendants arguments were not completely devoid of merit, but, instead, simply did not prevail in th[e] case").

[28] Because the Plaintiffs have not sought to recover costs, the issue need not be addressed.