IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                                *

JAMES CROSS, et al.,            *

     Plaintiffs,                *

          v.                    *   CIVIL NO.:  WDQ-05-0001

FLEET RESERVE ASSOCIATION       *
PENSION PLAN, et al.,
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

James Cross, Charles Calkins, Edward Huylebroeck,[1] James
Lee, Jerry Butler, Pamela Wells, Patricia J. Williamson, and
Heidi Schuller sued Fleet Reserve Association Pension Plan ("the
Plan") and the Plan's administrator, Noel Bragg, under the
Employment Retirement Income Security Act of 1974 ("ERISA").[2]
Pending are the Plaintiffs' motions for reconsideration under
Fed. R. Civ. P. 59(e) and under Fed. R. Civ. P. 60(b).  For the
following reasons, the Rule 59(e) motion will be granted in part
and denied in part, and the Rule 60(b) motion will be granted.

---

[1] On August 21, 2007, the executor of Edward Huylebroeck, Jr.'s
estate, Doreen Patricia Huylebroeck, was substituted as
plaintiff for the deceased.  Paper No. 121.

[2] 29 U.S.C. §§ 1001, et seq.

I.  Background

The Plaintiffs, former employees of the Fleet Reserve Association ("FRA") and vested participants and beneficiaries of the Plan, sued the Defendants for: (1) violating ERISA's reporting and disclosure requirements; (2) breach of fiduciary duty; (3) violating ERISA's notification requirements; and (4) erroneously denying the Plaintiffs' claims for additional benefits.

The FRA adopted the Plan in 1972.  Paper No. 64 at 2.  Its terms were restated in 1985 (the "1985 Plan") to provide that accrued benefits would be calculated using a "Step Formula."[3] *Id.* at 2.  In November 1996, the FRA board of directors amended the Plan (the "1996 Plan") to change the formula for calculating accrued benefits (the "Integration Formula").[4]  *Id.* at 2-3.  The Plaintiffs retired and received lump sum benefits between May 1996 and August 2002.  *Id.*

In March 2002, the Plan learned from its actuary that accrued benefits paid had been calculated using the Step Formula rather than the Integration Formula in the 1996 Plan.  *Id.* Bragg investigated and concluded that the Integration Formula's

---

[3]  The Step Formula provides for a lesser rate of benefit accrual for the portion of a participant's compensation that exceeds a stated amount (the "integration level").  Paper No. 64 at 2.

[4]  The Integration Formula provided a greater rate of benefit accrual for compensation in excess of the integration level. *Id.* at 3.  The 1996 Plan was effective July 1, 1989.  *Id.*

inclusion in the 1996 Plan was a mistake.  Paper No. 132 at 6.

Bragg explained this mistake to the FRA Board at a special

meeting in July 2002, and the FRA announced the scrivener's

error at its National Convention later that year.  *Id*.  In

October 2003, the Internal Revenue Service ("IRS") granted

Bragg's request to "correct" the Plan for a "scrivener's error"

and allowed the Plan to revert to the Step Formula for tax

purposes.  *Id*.

On April 24, 2004, the Plaintiffs applied for additional

benefits owed under the 1996 Plan Integration Formula.  *Id*.  The

Plan denied the Plaintiffs' requests.  Paper No. 20 at 12.

On January 3, 2005, the Plaintiffs sued the Plan, Bragg,

and ten former members of the Fleet Reserve Association's Board

of Directors for (1) ERISA reporting and disclosure violations

(Count I); (2) breach of fiduciary duty (Count II); (3) improper

plan amendment under ERISA (Count III); and (4) pension benefits

under the 1996 Plan (Count IV).  Paper No. 1.

The claims against the former board members were dismissed

by consent motion on July 7, 2006.  Paper No. 57.  On September

28, 2006, this Court granted summary judgment for (1) the

Defendants on Count I and on Count II as to the claims of all

the Plaintiffs except Charles Calkins, Paper No. 64 at 14-20,

and (2) the Plaintiffs on Counts III and IV, holding that "Bragg

erred in applying the doctrine of scrivener's error to reform

3

the terms of the 1996 Plan," *id*. at 10, 13. That judgment was subsequently amended to grant the Defendants summary judgment on Counts II and III as to all the Plaintiffs, Paper Nos. 72, 110.

On January 16, 2007, the Plaintiffs filed a motion for attorneys' fees, Paper No. 78, which was denied as untimely on July 3, 2007, Paper No. 110. On July 24, 2009, the Fourth Circuit (1) affirmed the award of summary judgment to the Defendants on Counts I, II, and III, and to the Plaintiffs on Count IV; and (2) vacated the denial of attorneys' fees, holding that the Plaintiffs were not time-barred. Paper No. 132 at 4, 13, 31. On September 9, 2009, the Plaintiffs renewed their motion for attorneys' fees and requested supplemental fees for their attorneys' work on the appeal. Paper No. 137. On February 16, 2010, this Court denied the Plaintiffs' motions for attorneys' fees (the "Fees Opinion"). Paper No. 146.

On March 1, 2010, the Plaintiffs moved for reconsideration of the Fees Opinion under Fed. R. Civ. P. 59(e), Paper No. 147, and moved again for reconsideration of that opinion under Fed. R. Civ. P. 60(b) on April 1, 2010, Paper No. 150. The Plaintiffs seek to recover $ 472,619.50 in attorneys' fees.[5]

---

[5] Although the Plaintiffs' supplemental memorandum in support of their motion for attorneys' fees requested $472,862.50, Paper No. 137 at 21, the product of the hours and rates requested was $472,619.50.

II.  Analysis

A.  Standard of Review

A party may move to alter or amend a judgment under Rule
59(e), or for relief from a judgment under Rule 60(b).  *See* Fed.
R. Civ. P. 59(e) & 60(b).[6]  A motion to alter or amend filed
within 28 days of the judgment is analyzed under Rule 59(e); if
the motion is filed later, Rule 60(b) controls.  *See* Fed. R.
Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269,
280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir.
1992).

1.  Rule 59(e)

Under Rule 59(e), a court may grant a motion to alter or
amend the judgment to: (1) accommodate an intervening change in
controlling law; (2) account for new evidence previously
unavailable; or (3) correct a clear error of law or prevent
manifest injustice.  *Gagliano v. Reliance Standard Life Ins.
Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008).  Rule 59(e) may not
be used to reargue points that could have been made before
judgment was entered.  *Exxon Shipping Co. v. Baker*, 128 S. Ct.
2605, 2617 n.5 (2008); *Hill v. Braxton*, 277 F.3d 701, 708 (4th
Cir. 2002).

---

[6]  A "judgment" is "a decree and any order from which an appeal
lies," which includes final judgments and appealable
interlocutory orders.  *Auto Servs. Co., Inc. v. KPMG, LLP*, 537
F.3d 853, 856 (8th Cir. 2008) (*quoting* Fed. R. Civ. P. 54(a)).

Mere disagreement with the court's decision will not result in granting a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Indeed, "[w]here a motion does not raise new arguments, but merely urges the court to 'change its mind,' relief is not authorized." *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2002); *see Erskine v. Bd. of Educ.*, 207 F. Supp. 2d 407, 408 (D. Md. 2002).

2. Rule 60(b)

For relief under Rule 60(b), the moving party must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Hale v. Belton Assoc., Inc.*, 305 Fed. Appx. 987, 988 (4th Cir. 2009)(*quoting Dowell v. State Farm Fire & Cas. Auto. Inc. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). She must also prove that she is entitled to relief under one of the six sections of Rule 60(b). *Dowell*, 993 F.2d at 48.

Rule 60(b) permits the court to amend a final judgment, order, or proceeding because of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) a void judgment; (5) satisfaction, release, or discharge of a judgment; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made within a

"reasonable time" and, for reasons (1)-(3), never more than a year after entry of a judgment or order.

B.    The Plaintiffs' Motions for Reconsideration

The Plaintiffs moved for reconsideration of the (1) denial of its bill of costs; and (2) denial of its claim for attorneys' fees.

1.    Entitlement to Costs

The Plaintiffs argue that they were improperly denied costs.  Paper No. 147 at 7.  Although this Court never intended to deny the bill of costs, the language in n.28 of the Fees Opinion[7] was unclear and should have read:

> Because the Plaintiffs' motion for attorneys' fees does not effect their entitlement to costs, the Plaintiffs' bill of costs will not be addressed.

*See* Paper No. 145 at 17 n.28.  Accordingly, nothing in that Opinion should be construed to preclude the Plaintiffs from pursuing a properly filed bill of costs.

2.    Entitlement to Attorneys' Fees

Section 502 of ERISA gives the court discretion to award reasonable attorneys' fees and costs to successful beneficiaries in an action involving delinquent contributions.  *See* 29 U.S.C. § 1132(g)(1) (2006).  To determine whether such an award is appropriate, the court must consider:

---

[7]  That note read: "[b]ecause the Plaintiffs have not sought to recover costs, the issue need not be addressed."  Paper No. 145 at 17 n.28.

(1) the degree of the opposing parties' culpability or bad faith;

(2) the opposing parties' ability to satisfy an award of attorneys' fees;

(3) whether such an award would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all of the ERISA plan participants and beneficiaries or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Reinking*, 910 F.2d at 1217-18 (*quoting Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)), *overruled on other grounds by Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017 (4th Cir. 1993).

In the Fees Opinion, this Court held that the first and fourth factors weighed against a fee award, the fifth factor was neutral, and the second and third factors favored a fee award. Paper No. 145 at 8-17. As the third factor weighed only slightly in favor of an award and fees are available only in "unusual case[s]," [8] the Plaintiffs' request for fees was denied. *Id*. at 8, 16-17. The Defendants request reconsideration of, *inter alia*, this Court's analysis of the fourth factor: whether the Plaintiffs sought to benefit all of the ERISA plan participants and beneficiaries or resolved a significant legal

---

[8] *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993) (The five factor analysis "seeks to identify that unusual case in which the judge may shift fees to further the policies of [Section 502 of ERISA].")*; see also Am. Med. Sec., Inc. v. Larsen*, 31 F. Supp. 2d 502, 505 (D. Md. 1998)("Only unusual circumstances justify such an award in an ERISA case.").

question about ERISA.  Paper No. 147 at 3-5; Paper No. 150 at 1-
2.

    a.   Significant Legal Question

    Under this factor, attorneys' fees are favored when the
case "resolve[s] a significant ERISA question."  *See Denzler v.*
*Questech*, Inc., 80 F.3d 97, 104 (4th Cir. 1996).  The Plaintiffs
argued that, considering *Blackshear* and other Fourth Circuit
precedents, the Fourth Circuit's affirmation of this Court's
holdings on the availability of the scrivener's error defense
and equitable reformation were inevitable.  *See* Paper No. 137 at
12-14 (*citing Blackshear v. Reliance Standard Life Ins. Co.*, 509
F.3d 634 (4th Cir. 2007)).  Having argued that the law was
clear, it is inconsistent for the Plaintiffs to contend that
this case resolved a significant ERISA question.

    b.   Benefit to ERISA Plan Participants and
         Beneficiaries

    In assessing this factor, courts consider whether the case
"vindicated  . . . other plan participant's rights."  *Custer*, 12
F.3d at 423.  This Court held that "[b]ecause this litigation
directly benefits only the named Plaintiffs, this factor
weigh[ed] against an award."  Paper No. 145 at 16.[9]

---

[9]  In their reply in support of attorneys' fees, the Plaintiffs
argued that "other plan participants will undoubtedly benefit
from this case result, including Plaintiff Cuthie in *Cuthie v.*
*Fleet Reserve Association*, Case No. WDQ-08-800, and the class of
participants named in that case."  Paper No. 141 at 11.  But

The Plaintiffs argue that they have new evidence that numerous plan beneficiaries other than the named Plaintiffs will benefit from the result in this case (the "*Cross* Litigation"). Paper No. 150 ¶ 2. In support, they have offered: (1) a March 29, 2010 letter from FRA to inform Vincent Cuthie, a plan participant, that he would receive an additional distribution because of the *Cross* litigation, Paper No. 150, Ex. 1; and (2) Cuthie's affidavit testimony that he will receive "additional pension benefits as a result of the litigation pursued by James Cross and others," Vincent Cuthie Aff. ¶ 4, March 31, 2010. The Plaintiffs have also cited two documents recently filed in *Cuthie v. Fleet Reserve Assoc. Pension Plan, et al.*, Case No.

_____

there were no citations to the record in *Cuthie* nor was there an estimate of the number of additional plan participants that would likely benefit from the *Cross* litigation. Although a court may take judicial notice of its own docket, this Court was unwilling to make the inferential leaps required to find that the *Cross* litigation would result in benefits to some unknown number of plan participants and beneficiaries.

The Plaintiffs also argued that "[t]he benefit to other plan participants is . . . shown by Dezube's statement which refers to the payment of the proper additional benefits to the group of plan participants similarly situated to the Plaintiffs." Paper No. 141 at 12. The Plaintiffs did not cite to any particular portion of Dezube's affidavit to support its argument, and upon review, the Court did not find a clear reference to "additional benefits" to unnamed plan participants in that document. *See* Paper No. 138, Ex. 3 (Robert S. Dezube Aff., October 15, 2009).

Just as the "court is not required to scour the record in search of evidence to defeat a motion for summary judgment," *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001), the court will not search the record for evidence to support a motion for attorney's fees.

WDQ-08-0800, wherein the Defendants have acknowledged that the *Cross* litigation resulted in (1) an amendment to the FRA Pension Plan on April 23, 2010;[10] and (2) additional pension benefits for approximately 19 plan participants in addition to the named plaintiffs.[11] *See* Paper No. 152.[12]

Given this newly discovered evidence demonstrating the benefit of the *Cross* litigation to a significant number of non-parties plan participants, this Court finds that the third factor now weighs heavily in favor of a fees award. Though a shift in the balance of the factors does not necessitate a fee award,[13] the Court is persuaded by the Plaintiffs' arguments in favor of awarding fees in this case. The Plaintiffs may recover their reasonable attorneys' fees.

C. The Plaintiffs' Reasonable Attorneys' Fees

To calculate an attorneys' fees award, the court "must first determine a lodestar figure by multiplying the number of

---

[10] *Cuthie*, No. WDQ-08-0800 at Paper No. 33 at 2 (filed April 30, 2010).

[11] *Cuthie*, No. WDQ-08-0800 at Paper No. 23 at 7-9 (filed April 9, 2010).

[12] Because these events occurred after this Court's Fees Opinion issued, these exhibits contain previously unavailable, new evidence.

[13] *See Wheeler v. Dynamic Eng'g Inc.*, 62 F.3d 634, 641 (4th Cir. 1995) (noting that the "five factors are meant as general guidelines and not a rigid test").

reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[14] After determining the lodestar, "hours spent on unsuccessful claims unrelated to successful claims" should be subtracted. *Id.* (*quoting Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Then, "depending on the degree of success," the court "awards some percentage of the remaining amount." *Id.* (internal quotation marks and citation omitted).

    1.   Lodestar Analysis

The Plaintiffs were represented by attorneys from the firm of Lebau & Neuworth, LLC ("L&N"), which specializes in employee benefit disputes. Richard P. Neuworth Decl. ¶ 3, April 26, 2007. Richard P. Neuworth, a partner at L&N, was principal

---

[14] Factors to consider in evaluating the reasonableness of the hours and rate include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (*quoting Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

counsel to the Plaintiffs. *Id.* ¶ 15. As required by Appendix B.1.b, the Plaintiffs provided charts of their legal expenses for the district court and Fourth Circuit proceedings organized by litigation phase. Paper No. 137 at 19-21.

The Plaintiffs seek to recover the following attorneys' fees:

| Attorney/Paralegal | Year Admitted | Hours | Rate | Fees |
|---|---|---|---|---|
| Stephen Lebau[15] | 1985 | 250.7 | $ 350.00 | $ 87,745.00 |
| Richard Neuworth[16] | 1981 | 844 | $ 400.00 | $ 337,600.00 |
| Anna Jefferson[17] | 1997 | 87.75 | $ 275.00 | $ 24,131.25 |
| Diane Eisemann | -- | 88.35 | $ 90.00 | $ 7,951.50 |
| Alexandra Neuworth | -- | 3.5 | $ 90.00 | $ 315.00 |
| Jennifer Alexander[18] | 2007 | 85.01 | $ 175.00 | $ 14,876.75 |
| | | | | |
| **TOTAL FEES** (exclusive of interest) | | | | $ 472,619.50[19] |

---

[15] Stephen Lebau Decl. ¶ 3, Apr. 26, 2007.

[16] Neuworth Decl. ¶ 2.

[17] Anna Jefferson Decl. ¶ 3, Apr. 26, 2007.

[18] Because Alexander was "a first-year associate" in March 2008, the Court assumes that she was admitted in 2007. Richard P. Neuworth Decl. ¶ 4, Sept. 26, 2009 (hereinafter *Second Neuworth Decl.*).

[19] Although the Plaintiffs' supplemental memorandum in support of their motion for attorneys' fees requested $472,862.50, Paper No. 137 at 21, the product of the hours and rates requested was $472,619.50.

a.   Reasonable Rate[20]

The fee applicant has the burden to establish the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson*, 560 F.3d at 244.  "[A]ffidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" is good evidence of the prevailing market rate.  *Id*. at 245.[21]

Appendix B of the Local Rules for the District of Maryland also provides "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases."  These rules apply when the prevailing

---

[20]  Because this litigation has been lengthy and attorneys' fees were improperly denied to the Plaintiffs in 2007, this Court "must consider the effect of delay in payment on the calculation of a reasonable fee." *Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 180 (4th Cir. 2002).  To account for lost time-value of money, the district court "may apply a fee rate based on an assessment of an attorney's reasonable rate under current market conditions rather than the rates that were appropriate at the time the service was rendered[.]" *Id*.  To account for the delay in payment on the value of the fee, this Court will award fees at the current market rates.

[21]  Although the court may consider what the attorney actually charged his client and the hourly rates recommended by the "Laffey Matrix"--an official statement of market-supported reasonable attorneys' fees rates by the United States Court of Appeals for the District of Columbia--neither is sufficient evidence of the prevailing market rate.  *Robinson*, 560 F.3d at 244-45.

party is entitled by law to reasonable attorneys' fees based on

a computation of hours and rates.  To guide the Court in

awarding fees, the Local Rules establish the following

presumptively reasonable fee ranges:

> (a) Lawyers admitted for less than 5 years: $150-190;
> (b) Lawyers admitted for 5 to 8 years: $165-250;
> (c) Lawyers admitted for 9 to 14 years: $225-300;
> (d) Lawyers admitted for 15 years or more: $275-400;
> (e) Paralegals and law clerks: $95-115.

D. Md. Local Rules, Appx. B.3.[22]

Here, the Plaintiffs have requested hourly rates within the

ranges suggested by the Local Rules, and the circumstances of

this case justify awards at the high end of the ranges.  This

case required above-average skill to litigate, as it involved

contentious ERISA issues and oral argument to the Fourth

Circuit.  Lebau and Neuworth have extensive experience in ERISA

matters,[23] an excellent reputation in the community,[24] and have

---

[22]  "These rates are intended to provide practical guidance to
lawyers and judges," and "[t]he facts established by case law
obviously govern over them."  *Id.* at n.6.

[23]  *See* Lebau Decl. ¶¶ 8-9, 11; Neuworth Decl. ¶¶ 4, 6-14.

[24]  The Defendants have acknowledged that "[t]he Plaintiffs'
lawyers appear to enjoy a good reputation in their community."
Paper No. 98 at 22. *See also* Signorille Decl. ¶ 15 ("Neuworth is
one of the few lawyers who I believe has the requisite skills,
capabilities and advocacy to skillfully litigate under ERISA");
Andrew D. Freeman Decl. ¶ 3, Apr. 20, 2007 ("Because of the
expertise and capabilities of Lebau & Neuworth, I have referred
employee benefit cases to them."); Jeffrey Rockman Decl. ¶ 3,
Apr. 6, 2007 ("I have referred employee benefit cases to the

consistently been awarded fees at the top end of the guideline range.[25] Jefferson also has 13-years of experience litigating employment-related cases and has been awarded fees at the top end of the guideline range for her work in past cases.[26]

Several local attorneys[27] have confirmed the reasonableness of the rates requested by the Plaintiffs.[28] Those rates are also commensurate with rates awarded by courts in this district in

---

firm of Lebau & Neuworth, LLC because of that firm's expertise and capabilities.").

[25] *See* Lebau Decl. ¶ 12; Neuworth Decl. ¶ 5.

[26] Anna Jefferson Decl. ¶¶ 3, 6-7, 9, Apr. 26, 2007.

[27] Because she only attested to familiarity with "attorney fee awards for obtaining additional benefits under ERISA in Washington, D.C.," this court did not consider Mary Ellen Signorelli's opinion about the reasonableness of the requested rates. *See* Paper No. 97, Ex. 11 (Mary Ellen Signorelli Decl. ¶ 17, Apr. 10, 2007).

[28] Andrew Freeman, a partner at Brown, Goldstein & Levy LLP familiar with rates for employment litigation in Baltimore, testified that (1) his current rate is $ 425.00 per hour, and (2) an "hourly rate of $400 . . . for Mr. Lebau and Mr. Neuworth for the work they performed in this case is at or below the market rate for attorneys of comparable knowledge and experience and is fair and reasonable[.]" Freeman Decl. ¶¶ 2, 7.
Elliott Andalman, a founding partner of Andalman & Flynn, P.C. who frequently litigates in the Northern and Southern Divisions of the U.S. District Court of Maryland, charges $ 395.00 per hour. Elliott Andalman Decl. ¶¶ 4, 7, Oct. 26, 2009.
Scott Elkind, a founding partner of Elkind & Shea who frequently appears in the Northern and Southern Divisions of the U.S. District Court of Maryland, charges $ 450.00 per hour. Scott Bertram Elkind Decl. ¶¶ 4, 7, Oct. 26, 2009.

recent ERISA cases.[29]  Accordingly, this Court will award fees at the rates requested by Plaintiffs.[30]

> b.  Reasonable Hours

A fee applicant also must establish the reasonableness of the hours requested.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Parties may not recover fees for time that is "excessive, redundant, or unnecessary."  *Plasterers' Local Union No. 96 Pension Plan v. Perry*, -- F. Supp. 2d --, 2010 WL 686694, at *3 (D. Md. 2010).  When the documentation of hours is vague or incomplete, the district court may reduce the award accordingly.  *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780 (D. Md. 2000).[31]

---

[29]  *See, e.g.*, *Plasterers' Local Union No. 96 Pension Plan v. Perry*, --F. Supp. 2d--, 2010 WL 686694, at *4 (D. Md. Feb. 24, 2010) (awarding lead attorney $385 per hour and finding the associates' rates "reasonable, even if some slightly exceed the rate suggested in the Local Rules").

[30]  The Defendants argue that the rates requested are above those customarily charged by attorneys litigating ERISA cases in this area.  Paper No. 98 at 21.  Joseph Semo, counsel to the Defendants, has attested that his rate during this litigation was $275/hour, which is typical of experienced attorneys working in ERISA.  Joseph Semo Aff. ¶¶ 8-9, May 11, 2007.  Considering the numerous affidavits presented by the Plaintiffs and the Local Rules suggested fee range, the Court is not persuaded to decrease the fee awards based on Semo's sole affidavit.

[31]  "[C]ourts frequently have reduced entire fee applications, or portions thereof, by a stated percentage to accommodate for excessive vagueness, or to address some other deficiency, such as redundant time entries, failure to exercise billing judgment, or excessive number of hours sought."  *Thompson v. U.S. Dept. of Housing and Urban Dev.*, 2002 WL 31777631, at *13.

The Defendants have made several general objections to the
"insufficient" descriptions of work performed. *See* Paper No.
138 at 11. But courts " will not review any challenged entry in
the bill unless the challenging party has identified it
specifically and given an adequate explanation for the basis of
the challenge." *Thompson v. United States Dep't of Housing &
Urban Dev.*, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002).
Accordingly, this Court will only address the Defendants'
specific challenges and not its generalized objections to the
time entries.

Specific challenges have been made to entries in the
Plaintiffs' time records on the following grounds:

| (1) Non-compensable Clerical Work | | | |
|---|---|---|---|
| Date | Entry | Hours | Attorney/Staff |
| 03/16/05 | UPS letter to AARP | 0.2 | Eisemann |
| 01/09/06 | Scan 6 exhibits & copy 2 sets of exhibits | 0.5 | Eisemann |
| 01/09/06 | Send motion to enforce subpoena to S. Jacobs | 0.1 | Eisemann |
| 02/28/06 | Exhibit preparation for motion | 0.4 | Eisemann |
| 06/13/07 | Mail copies of reply | 0.3 | Eisemann |
| 06/10/07 | Prepare and email letter to clients | 1.0 | Eisemann |
| 07/13/07 | Send out copies of reconsideration | 0.2 | Eisemann |
| 07/18/07 | Prepare and send status letter to clients | 0.75 | Eisemann |
| 07/25/07 | Send copies of reply | 0.2 | Eisemann |
| 08/14/07 | Copy documents & send package | 0.3 | Eisemann |
| 09/11/07 | Prepare and send filing fee | 0.1 | Eisemann |
| 02/01/08 | Prepare filing fee | 0.2 | Eisemann |
| 02/12/08 | Prepare docket statement & exhibits | 0.2 | Eisemann |
| 02/13/08 | Mail docket statement to 4th Circuit | 0.2 | Eisemann |
| 01/15/09 | Prepare check for Court | 0.2 | Eisemann |

| (2) Excessive Charges | | | |
|---|---|---|---|
| 03/14/05 | Discuss 1993 plan & benefits with Cross | 1.0 | R. Neuworth |
| 03/17/05 | Prepare amended compl. | 4.5 | R. Neuworth |
| 03/19/05 | Prepare amended compl. & discuss with Cross | 1.2 | R. Neuworth |
| 03/21/05 | Prepare amended compl. | 2.5 | R. Neuworth |
| 03/22/05 | Prepare amended compl. | 1.0 | R. Neuworth |
| 03/28/05 | Discuss status with Cross | 0.1 | R. Neuworth |

| 03/30/05 | Send letter to Watkins | 0.1 | R. Neuworth |
|---|---|---|---|
| 04/05/05 | Review and prepare amended compl. | 4.0 | R. Neuworth |
| 04/06/05 | Prepare amended compl. | 1.2 | R. Neuworth |
| 04/07/05 | Prepare amended compl. | 1.5 | R. Neuworth |
| 04/08/05 | Prepare amended compl., call clerk's office, reconsideration letter, exhibit notice | 0.9 | R. Neuworth |
| 04/09/05 | Prepare amended compl. | 1.7 | R. Neuworth |
| 04/11/05 | Finalize amended compl. | 2.2 | R. Neuworth |
| 04/13/05 | Talk to Cross re: compl., organize files, prepare service of process | 1.6 | R. Neuworth |
| 04/14/05 | Talk to Cross and clerk's office | 0.5 | R. Neuworth |
| 04/19/05 | Talk to Cross re: compl. | 0.4 | R. Neuworth |
| 04/21/05 | Talk to Cross re: compl. | 0.7 | R. Neuworth |
| 04/22/05 | Send notice of service to Court, talk to Cross and Atty. Wakins | 0.5 | R. Neuworth |
| 04/28/05 | Talk to Cross | 0.3 | R. Neuworth |

| (3) Vague entry | | | |
|---|---|---|---|
| 01/15/05 | i/o conference with R. Neuworth | 0.3 | Lebau |

| (4) Improper billing of travel | | | |
|---|---|---|---|
| 01/24/06 | Transportation & attend Kaye Dep. | 8.0 | R. Neuworth |
| 03/01/06 | Transportation, Calkins Dep. & Prepare for Dezube Dep. | 12.0 | R. Neuworth |
| 03/02/06 | Transportation & attend Dezube Dep. | 9.0 | R. Neuworth |
| 04/02/06 | Transportation & attend Watkins Dep. | 10.0 | R. Neuworth |

Clerical activities should not be billed at an attorney's or paralegal's rate.[32] "When clerical tasks are billed at [paralegal] rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Here, the Plaintiffs do not object to eliminating 2.35 hours, representing all of the time billed by Eisemann on and after June 13, 2007. *See* Paper No. 141 at 23. Finding this reduction sufficient, the Court will

---

[32] *See Holmes v. Astrue*, 2010 WL 3220085, at *2 (D.S.C. Aug. 12, 2010).

allow the Plaintiffs to recover the remaining challenged "clerical" hours.

The Defendants argue that the 25.9 hours spent by R. Neuworth preparing the amended complaint and discussing it with Cross was excessive. Paper No. 98, Ex. D at 3. The red-line version of the amended complaint shows that 95 paragraphs and Count IV, the claim on which the Plaintiffs ultimately prevailed, were added to the original complaint. *See* Paper No. 3, Ex. 1. Considering the length and significance of the amendments and the Defendants' failure to explain why the hours charged are "excessive," no reduction is necessary.

Upon review, this Court agrees with the Defendants that Lebau's time entry on January 15, 2005 is insufficiently specific to evaluate its reasonableness; thus, Lebau's time will be reduced by 0.3 hours.

Under Appendix B.2.e, attorneys may charge their full hourly rate for travel time not spent on substantive work for a maximum of four hours each day. The challenged entries do not show (1) what part of the time entered accounts for travel time, or (2) whether R. Neuworth did work for the Plaintiffs during that time. Accordingly, this Court will reduce each of the challenged entries by one hour--for a total reduction of four

hours from R. Neuworth's time--to account for the lack of billing specificity.[33]

The Defendants have also challenged entries related to certain activities that they argue should be reduced or not compensated at all, including:

---

[33] By declaration, R. Neuworth stated that his "travel time included one hour to and from the depositions from my office in Towson, Maryland to the various deposition sites either in Bethesda, Maryland[;] Rockville, Maryland[;] or Washington, D.C." Richard P. Neuworth Decl. ¶ 12, June 5, 2007 (hereinafter *R. Neuworth Decl. II*). The Court declines to consider this *post hoc* estimate of time not recorded in the entries originally submitted by the Plaintiffs.

| Activity | Date(s) | Attorney/Staff | Hours |
|---|---|---|---|
| (1) Prepare interrog. responses | 12/27/05-12/29/05 | R. Neuworth | 15.0 |
| (2) Preparation for Bragg & Kaye[34] Deps. | 01/10/06-01/21/06 | R. Neuworth | 75.6 |
| | | Eisemann | 14.0 |
| (3) Preparation for Watkins Dep.[35] | 04/25/06-05/01/06 | R. Neuworth | 29.0 |
| (4) Motion to Exclude McIntyre from Cross & Calkins Deps. | 02/27/06 | R. Neuworth | 2.5 |
| (5) Research and Preparation of Opp'n to Motion for Stay | 01/26/07-02/06/07 | R. Neuworth | 4.45 |
| | | Jefferson | 1.25 |
| | | Lebau | 17.4 |
| (6) Research & Prepare Opp'n to Mot. for Recons. | 06/07/07-07/13/07 | Jefferson | 3.0 |
| | | Lebau | 3.5 |
| | | R. Neuworth | 7.75 |
| (7) Research on substitution of parties following death of client | 07/17/07-07/24/07 | R. Neuworth | 0.65[36] |
| | | Jefferson | 1.0 |
| (8) Preparation of Reply | 07/23/07-07/26/07 | Lebau | 10.8 |
| | | R. Neuworth | 1.75 |
| (9) Preparation of appeal & fee petitions | 07/24/07-09/24/09 | Lebau | 75.7 |
| | | R. Neuworth | 167.95 |
| | | Jefferson | 4.75 |
| | | Alexander | 85.01 |

The Defendants first argue that the Plaintiffs should not be compensated for their argumentative interrogatory responses. *See* Paper No. 98, Ex. D at 5. Although the Defendants may have been dissatisfied with the content of the interrogatory responses, the Court finds that the time spent on them was not excessive; thus, no reduction is necessary.

---

[34]  George Kaye served on the FRA National Board of Directors as the National Financial Secretary and was the *de facto* administrator of the Plan in the early 1990s.  Paper No. 64 at 15.

[35]  Charles Watkins, Esquire, is the FRA attorney who advised Bragg after discovery of improper benefits calculation.

[36]  Although the Defendants summed his time entries to 1.65 hours, review of the time records shows that R. Neuworth devoted only 0.65 hours during this period to the substitution issue. *See* Paper No. 137, Ex. 2 at Att. A at 1-2.

The Defendants also argue that the over 100 hours spent preparing for the depositions of Bragg, Kaye, and Watkins was excessive. *See id.* at 9-11. R. Neuworth, the attorney who took all three depositions, has explained that he needed the time to review "thousands of pages of documents that [the] Defendants produced in discovery" before the depositions, which each took a full day to complete. R. Neuworth Decl. II ¶ 2.[37] But the time entries themselves do not provide any detail about his activities apart from the fact that he was "preparing" for the depositions. Even considering the need for extensive document review, the time spent preparing appears excessive, and the Court will subtract 20 hours from R. Neuworth's time.

The Defendants also contend that the Plaintiffs should not be compensated for their unsuccessful motion to exclude McIntire and opposition to the motion for stay. *See id.* at 13, 20-21. Because the hours spent on these activities does not appear excessive and these efforts--though unsuccessful--were not unreasonable or in bad faith, no reduction to these entries will be made.

---

[37] To show the need for extensive preparation, R. Neuworth has also asserted that (1) the Bragg deposition included 40 exhibits and the transcript was over 250-pages; (2) the Kaye deposition was over 150-pages; and (3) the Watkins deposition included 26 exhibits and the deposition transcript was 226 pages. R. Neuworth Decl. II ¶¶ 3, 5, 10,

Citing entries that show multiple attorneys billing for similar activities, the Defendants argue that the Plaintiffs billed duplicative hours for research on substitution of parties, preparation of a reply in July 2007, and preparation of the appeal and fee petitions.  Paper No. 138 at 12.  Upon review of the time entries related to the substitution of parties-- showing Jefferson's one hour of research and R. Neuworth's 40- minute telephone call with new client Doreen Hoylebroeck--the Court finds nothing to indicate duplication of work.  By declaration, R. Neuworth has also explained that he "exercised billing discretion by delegating work to . . . Lebau, and other associate attorneys."  Richard P. Neuworth Decl. ¶ 1, October 30, 2009 [hereinafter *R. Neuworth Decl. III*].  As courts encourage delegation to attorneys with lower rates and the time billed does not appear to be excessive, no reductions will be made to the hours billed for preparation of the July 2007 reply, appeal, or fee petition.

With the hour and rate adjustments discussed above, the loadstar calculation is as follows:

| Attorney/Paralegal | Requested Hours | Reduced | Recoverable Hours | Rate | Fees |
|---|---|---|---|---|---|
| Stephen Lebau | 250.7 | – 0.3 | 250.4 | $ 350.00 | $ 87,640.00 |
| Richard Neuworth | 844.0 | – 24.0 | 820.0 | $ 400.00 | $ 328,000.00 |
| Anna Jefferson | 87.75 | | 87.75 | $ 275.00 | $ 24,131.25 |
| Diane Eisemann | 88.35 | – 2.35 | 86.0 | $ 90.00 | $ 7,740.00 |
| Alexandra Neuworth | 3.5 | | 3.5 | $ 90.00 | $ 315.00 |
| Jennifer Alexander | 85.01 | | 85.01 | $ 175.00 | $ 14,876.75 |
| | | | | TOTAL | $ 462,703.00 |

## 2. Unsuccessful, Unrelated Claims

"When successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998). But, if "claims arise out of a common core of facts, and involve related legal theories," courts should either identify specific hours that should be eliminated or reduce an award to account for the plaintiff's limited success. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789-90 (1989).[38]

Here, the Plaintiffs were unsuccessful on the claims in Counts I-III and against the ten former members of the Fleet Reserve Association's Board of Directors, but succeeded on their claim for additional benefits under the 1996 Pension Plan's integration formula. Considering the interrelatedness of the claims and the common core of facts, this Court finds that a 10% reduction is appropriate.

## 3. Degree of Success

Courts are instructed to "give primary consideration to the amount of damages awarded as compared to the amount sought[.]" *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). Here, the amended complaint asked the court to (1) "order the [Plan] to

---

[38] When the claims "involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis." *Broadziak*, 145 F.3d at 197 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 435 (1992)).

pay benefits based on an integrated benefits formula and pursuant to Exhibit 18 of [the] Complaint," (2) award attorneys fees and costs, and (3) award "interest to Plaintiffs from the time of their retirements until the present[.]" Am. Compl. at 36. Although the Plaintiffs only prevailed on one of their four claims, they have gained all of the relief originally sought and been awarded $460,009.19 in past benefits. *See* Paper No. 109 at 14. Based on this high degree of success, no additional fee reductions are warranted.

The Defendants will be jointly and severally liable[39] for the Plaintiffs' attorneys' fees in the amount of $ 416,432.70.

III. Conclusion

For the reasons stated above, the Rule 59(e) motion will be granted in part and denied in part, and the Rule 60(b) motion will be granted. The Plaintiffs are entitled to attorneys' fees

---

[39] Courts have "wide discretion in determining how to allocate fees among defendants." *Essex v. Randall*, 2006 WL 83424, at *7 (D. Md. Jan. 11, 2006). To determine the proper allocation of a fee award among defendants, courts in this district have used the factors enumerated in *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984). *See id.* Those factors include: (1) the nature of the injury and who caused it, (2) the amount of time the Plaintiffs spent litigating against each defendant, and (3) the defendants' ability to pay, which is the least important consideration. *Thompson*, 2002 WL 31777631, at *15. Having considered those factors, this Court concludes that joint and several liability against the Defendants is appropriate in this case.

in the amount of $ 416,432.70 plus post-judgment interest at the legal rate.

September 13, 2010                    _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge